UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| YOANDY FERNANDEZ-MORALES,<br><br>Plaintiff,<br><br>v.<br><br>CURRIER, *et al.*,<br><br>Defendants. | Case No. 3:23-CV-00068-CLB[1]<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 30] |

This case involves a civil rights action filed by Plaintiff Yoandy Fernandez-Morales ("Fernandez-Morales") against Defendants Donna Abram ("Abram"), Holly Crosby ("Crosby"), Karissa Currier ("Currier"), Bob Faulkner ("Faulkner"), Nowell Granados ("Granados"), Michael Minev ("Minev"), and Symour Omandac ("Omandac") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 30, 32.)[2] Fernandez-Morales opposed the motion, (ECF No. 38), and Defendants replied, (ECF No. 39). For the reasons stated below, the Court grants Defendants' motion for summary judgment, (ECF No. 30).

**I.    BACKGROUND**

Fernandez-Morales is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events related to this case occurred while Fernandez-Morales was housed at the Southern Desert Correctional Center ("SDCC").

Fernandez-Morales alleges the following in his complaint: On March 7, 2022, a gastroenterologist diagnosed Fernandez-Morales with internal hemorrhoids. (ECF No. 5 at 5.) On July 23, 2022, Fernandez-Morales started to have constipation and abdominal

---

[1]    The parties consented to the undersigned's jurisdiction to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C.§ 636(c) and Federal Rule of Civil Procedure 73. (*See* ECF No. 25.)

[2]    ECF No. 32 consists of exhibits filed under seal in support of the motion for summary judgment.

pain and sent a kite to medical. (*Id.*) At some point, Omandac prescribed Fernandez-Morales daily aspirin. (*Id.* at 27.) On August 8, 2022, Fernandez-Morales sent a kite to Omandac about his pain. (*Id.* at 5.) On August 15, 2022, Omandac sent Fernandez-Morales suppositories. (*Id.* at 7.) After taking the suppositories, Fernandez-Morales had difficulties urinating and started having high blood pressure. (*Id.*) On August 19, 2022, Fernandez-Morales wrote to Omandac requesting emergency medical attention. (*Id.*) Omandac responded that Fernandez-Morales had been placed on the provider sick call list. (*Id.*) Throughout August 2022, Fernandez-Morales wrote more kites to Omandac asking for medical emergency attention because the suppositories were causing Fernandez-Morales severe pain, difficulty urinating, and high blood pressure. (*Id.* at 6-7.) Omandac ignored those kites. (*Id.* at 7.)

After writing many more kites, Fernandez-Morales finally saw a doctor on September 8, 2022, causing Fernandez-Morales to suffer in excruciating pain for more than 50 days. (*Id.* at 9.) Fernandez-Morales suffered from bleeding, urination difficulties, depression, and high blood pressure. (*Id.* at 10.) Fernandez-Morales had contacted Omandac 39 times during that period. (*Id.*) Fernandez-Morales also contacted Minev 29 different times during that period and received the standard response, "placed for medical appointment." (*Id.* at 11.) Due to the lack of medical response, Fernandez-Morales lost 60 pounds, could not eat or sleep, and his mental health deteriorated. (*Id.*)

In September 2022, prison officials gave Fernandez-Morales aspirin and suppositories even though Fernandez-Morales needed to be taken to a hospital. (*Id.* at 12.) Fernandez-Morales submitted several medical requests to Faulkner in September, October, and November 2022 about his uncontrollable bleeding, urination issues, high blood pressure, and depression. (*Id.*) Fernandez-Morales suffered with these symptoms for six months waiting for prison officials to respond. (*Id.* at 13.)

Fernandez-Morales has chronic depression and insomnia. (*Id.* at 14.) In August 2022, Fernandez-Morales wrote multiple times to Crosby, a psychiatrist, and explained that the suppositories were causing him to have severe depression, anxiety, and no sleep.

(*Id.* at 15.) Crosby responded that Fernandez-Morales was scheduled for sick call and that she could not check on Fernandez-Morales's hemorrhoid medications. (*Id.*) On September 19, 2022, Crosby saw Fernandez-Morales. (*Id.* at 16.) In response to his hemorrhoid medication pain problem, Crosby upped Fernandez-Morales's dosage for his depression and insomnia medication. (*Id.*) Fernandez-Morales wrote kites to Crosby multiple times in October 2022 about her medication causing him problems, but she ignored Fernandez-Morales and continued to give Fernandez-Morales that medication for seven months. (*Id.*) Fernandez-Morales kited Crosby 35 different times for help, but she ignored him. (*Id.* at 18.)

Fernandez-Morales kited Abram multiple times in August and September 2022 about his symptoms, but she ignored Fernandez-Morales. (*Id.* at 18-19.) When Fernandez-Morales met with Abram, she refused to get a Spanish translator even though Fernandez-Morales only spoke Spanish and Abram only spoke English. (*Id.* at 19.) Out of frustration, Abram simply sent Fernandez-Morales back to his cell while he continued to bleed, have urination issues, and depression. (*Id.*)

Granados also ignored Fernandez-Morales's medical requests for a six-month period. (*Id.* at 21.) Fernandez-Morales submitted 20 medical kites to Granados. (*Id.* at 23.) Fernandez-Morales also filed multiple grievances with Currier about his bleeding, high blood pressure, difficulty urinating, depression, and anxiety. (*Id.* at 25.) Currier denied Fernandez-Morales's grievances. (*Id.*)

On December 30, 2022, prison officials took Fernandez-Morales to a gastroenterologist who informed Fernandez-Morales that the aspirin was causing Fernandez-Morales to bleed, and the suppositories were causing the rest of his symptoms. (*Id.* at 30.) The specialist told Fernandez-Morales to stop taking those medications. (*Id.*)

The District Court screened the complaint pursuant to 28 U.S.C. § 1915A, allowing Fernandez-Morales to proceed on an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants for allegedly failing to properly treat

Fernandez-Morales when he complained about his hemorrhoid medication, which he alleges caused him to experience rectal bleeding, urination problems, high blood pressure, depression, and anxiety. (ECF No. 4.)

On August 9, 2024, Defendants filed the instant motion for summary judgment arguing: (1) Fernandez-Morales failed to exhaust his administrative remedies; (2) Defendants are entitled to qualified immunity because there was no constitutional violation and there was no clearly established law that would have placed Defendants on notice that they were violating Fernandez-Morales's rights; (3) several Defendants did not personally participate in the alleged constitutional violations; and (4) there is no basis for punitive damages. (ECF No. 30.)

### A.     Undisputed Facts

The following facts are undisputed: According to an unusual occurrence report, on July 9, 2019, Fernandez-Morales was seen by medical after noting that he "ate spicy food and [had] gastritis." (ECF No. 32-3 at 29.) Fernandez-Morales was given antacid and was scheduled for a follow-up with medical. (*Id.*) The unusual occurrence report notes Fernandez-Morales's weight at the time was 245 pounds. (*Id.*) It was also noted there was a "language barrier mostly Spanish speaking." (*Id.*) On July 10, 2019, Fernandez-Morales was placed on a medical diet for reduced cholesterol/low fat. (*Id.* at 19-20.)

On March 7, 2022, Fernandez-Morales was seen by outside gastroenterologist, Dr. Michael Zimmerman ("Dr. Zimmerman"), for complaints of abdominal pain. (ECF No. 32-2 at 6-8) At the appointment, Dr. Zimmerman recommended a colonoscopy and EGD exam. (*Id.* at 7.) The impressions from the appointment were upper abdominal pain, Helicobacter pylori infection, constipation, and rectal bleeding. (*Id.*) That same day, Omandac requested authorization for the colonoscopy from the UR Panel, which was authorized on March 16, 2022. (*Id.* at 5.)

On May 5, 2022, the EGD-colonoscopy was performed. (*Id.* at 17-20.) Findings from the colonoscopy showed normal mucosa in the whole colon, no AVMs, masses, evidence of colitis or other abnormalities seen and no rectum abnormalities. (*Id.* at 20-

21.) The colonoscopy revealed "small non-bleeding internal hemorrhoids," "mild to moderate chronic active gastritis", and helicobacter pylori organisms. (*Id.*) Fernandez-Morales was told to continue home medications, follow-up in 2 months, repeat a colonoscopy in 10 years, and take "Omeprazole 20mg one tab daily before breakfast." (*Id.* at 20.) Fernandez-Morales's weight at this appointment was noted to be 220 pounds. (*Id.* at 34.) On May 6, 2022, Omandac requested a follow-up in 2 months per the recommendation by Dr. Zimmerman. (*Id.* at 40.) On May 18, 2022, the UR Committee decided they would continue to monitor Fernandez-Morales's condition. (*Id.*)

On October 18, 2022, Omandac requested authorization for a follow-up with Dr. Zimmerman related to Fernandez-Morales's chronic H. Pylori infection and internal hemorrhoids with on and off rectal bleeding. (*Id.* at 59.) This request was authorized by the UR Committee on November 2, 2022. (*Id.*) On December 30, 2022, Fernandez-Morales was seen by Dr. Zimmerman for his follow-up related to his complaints of rectal bleeding. (*Id.* at 22-23.) Fernandez-Morales was instructed to have a high fiber diet, take a fiber supplement, discontinue hemorrhoidal suppositories, take probiotics daily, and discontinue aspirin. (*Id.* at 23.) Finally, he was told that if bleeding recurs, he will need a surgical consultation for possible hemorrhoidal banding and to follow-up as needed. (*Id.*) Fernandez-Morales's weight at this appointment was noted to be 215 pounds. (*Id.* at 67.)

On August 31, 2023, Fernandez-Morales was seen for a surgical consultation on with Dr. Arturo Guzman ("Dr. Guzman"). (ECF No. 32-4 at 3-4.) At this appointment, Fernandez-Morales weighed 220 pounds. (*Id.*) Dr. Guzman examined Fernandez-Morales and noted nothing unusual on external inspection, on digital rectal examination, he noted no bleeding or palpable masses, and on anoscopic examination there were internal hemorrhoids that do not appear inflamed and have no stigmata of bleeding. (*Id.*) Based on this examination, Dr. Guzman diagnosed Fernandez-Morales with First degree hemorrhoids. (*Id.* at 4.) Dr. Guzman opined that because there was no obvious source of bleeding found during the endoscopies, "hemorrhoids could very well have been the source for bleeding." (*Id.*) Dr. Guzman noted Fernandez-Morales should not be on aspirin

as a preventive strategy unless he has a history of cardiac issues. (*Id*.) Dr. Guzman also recommended Fernandez-Morales have access to suppositories if the internal hemorrhoids were bleeding. (*Id.*) Dr. Guzman recommended continuing medical management for Fernandez-Morales unless his symptoms did not improve, or they ceased responding to the medical management, in which case he recommended follow-up for a hemorrhoidectomy. (*Id.*)

Defendant Crosby is a psychiatric nurse practitioner who was stationed at SDCC on Mondays only from November 30, 2020, through September 26, 2022. (ECF No. 30-2 at 4.) Her first meeting with Fernandez-Morales occurred on February 16, 2021, and her last appointment occurred on September 19, 2022. (*Id.* at 6-7.) Crosby diagnosed Fernandez-Morales with depressive disorder, unspecified. (*Id.* at 6; ECF No. 30-3 at 4.) Fernandez-Morales was prescribed Prozac for his psychiatric conditions. (*Id.*)

The "Language Link Log" kept by SDCC medical staff when translation services are used over the phone show Fernandez-Morales had an interpreter present for medical appointments on the following dates in 2022: January 6, January 27, March 1, April 25, May 10, June 13, June 27, September 8, September 19, and December 21. (ECF No. 30-4 at 2; ECF No. 30-21 at 8.) Fernandez-Morales was transferred to High Desert State Prison ("HDSP") on January 23, 2023. (ECF No. 30-5.)

## II.     LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3).

1  Nevertheless, the court will view the cited records before it and will not mine the record
2  for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party
3  does not make nor provide support for a possible objection, the court will likewise not
4  consider it).

**III.    DISCUSSION**

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally

interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if they "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which they can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Fernandez-Morales's deliberate indifference to serious medical need claim is based on Fernandez-Morales's allegations that he complained for months about his hemorrhoid medication, which he alleges caused him to bleed, have urination problems, high blood pressure, depression, and anxiety. (ECF No. 5.)

Starting with the objective element, the parties agree that Fernandez-Morales's hemorrhoids and mental health issues constitute "serious medical needs." However, Defendants argue summary judgment should be granted because Fernandez-Morales cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Fernandez-Morales's conditions, as he was provided appropriate care for his conditions.

Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Fernandez-Morales's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires Fernandez-Morales to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th

Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, as detailed above, Defendants submitted authenticated and undisputed evidence regarding the medical treatment Fernandez-Morales received related to hemorrhoids. According to this evidence, on March 7, 2022, Fernandez-Morales was seen by outside gastroenterologist, Dr. Michael Zimmerman ("Dr. Zimmerman"), for complaints of abdominal pain. (ECF No. 32-2 at 6-8) At the appointment, Dr. Zimmerman recommended a colonoscopy and EGD exam. (*Id.* at 7.) The impressions from the appointment were upper abdominal pain, Helicobacter pylori infection, constipation, and rectal bleeding. (*Id.*) That same day, Omandac requested authorization for the colonoscopy from the UR Panel, which was authorized on March 16, 2022. (*Id.* at 5.)

On May 5, 2022, the EGD-colonoscopy was performed. (*Id.* at 17-20.) Findings from the colonoscopy showed normal mucosa in the whole colon, no AVMs, masses, evidence of colitis or other abnormalities seen and no rectum abnormalities. (*Id.* at 20-21.) The colonoscopy revealed "small non-bleeding internal hemorrhoids," "mild to moderate chronic active gastritis", and helicobacter pylori organisms. (*Id.*) Fernandez-Morales was told to continue home medications, follow-up in 2 months, repeat a colonoscopy in 10 years, and take "Omeprazole 20mg one tab daily before breakfast." (*Id.* at 20.) Fernandez-Morales's weight at this appointment was noted to be 220 pounds. (*Id.* at 34.) On May 6, 2022, Omandac requested a follow-up in 2 months per the recommendation by Dr. Zimmerman. (*Id.* at 40.) On May 18, 2022, the UR Committee decided they would continue to monitor Fernandez-Morales's condition. (*Id.*)

On October 18, 2022, Omandac requested authorization for a follow-up with Dr. Zimmerman related to Fernandez-Morales's chronic H. Pylori infection and internal hemorrhoids with on and off rectal bleeding. (*Id.* at 59.) This request was authorized by the UR Committee on November 2, 2022. (*Id.*) On December 30, 2022, Fernandez-Morales was seen by Dr. Zimmerman for his follow-up related to his complaints of rectal bleeding. (*Id.* at 22-23.) Fernandez-Morales was instructed to have a high fiber diet, take

a fiber supplement, discontinue hemorrhoidal suppositories, take probiotics daily, and discontinue aspirin. (*Id.* at 23.) Finally, he was told that if bleeding recurs, he will need a surgical consultation for possible hemorrhoidal banding and to follow-up as needed. (*Id.*) Fernandez-Morales's weight at this appointment was noted to be 215 pounds. (*Id.* at 67.)

On August 31, 2023, Fernandez-Morales was seen for a surgical consultation on with Dr. Arturo Guzman ("Dr. Guzman"). (ECF No. 32-4 at 3-4.) At this appointment, Fernandez-Morales weighed 220 pounds. (*Id.*) Dr. Guzman examined Fernandez-Morales and noted nothing unusual on external inspection, on digital rectal examination, he noted no bleeding or palpable masses, and on anoscopic examination there were internal hemorrhoids that do not appear inflamed and have no stigmata of bleeding. (*Id.*) Based on this examination, Dr. Guzman diagnosed Fernandez-Morales with First degree hemorrhoids. (*Id.* at 4.) Dr. Guzman opined that because there was no obvious source of bleeding found during the endoscopies, "hemorrhoids could very well have been the source for bleeding." (*Id.*) Dr. Guzman noted Fernandez-Morales should not be on aspirin as a preventive strategy unless he has a history of cardiac issues. (*Id.*) Dr. Guzman also recommended Fernandez-Morales have access to suppositories if the internal hemorrhoids were bleeding. (*Id.*) Dr. Guzman recommended continuing medical management for Fernandez-Morales unless his symptoms did not improve, or they ceased responding to the medical management, in which case he recommended follow-up for a hemorrhoidectomy. (*Id.*) Fernandez-Morales was diagnosed with depressive disorder, unspecified, and prescribed Prozac for his psychiatric condition. (ECF No. 30-2 at 6; ECF No. 30-3 at 4.)

Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they affirmatively treated Fernandez-Morales's medical conditions. In fact, the medical records provided show Defendants actively treated Fernandez-Morales's numerous medical needs, including regularly sending him to receive care by outside specialists. Further, these outside specialists agreed with the recommendations and regular care Fernandez-Morales was being provided by

Defendants. There is no evidence whatsoever in the record to show that Defendants were on notice that providing suppositories—as recommended by two outside specialists—was causing harm. Dr. Guzman opined the cause of the rectal bleeding was likely from the hemorrhoids, not the suppositories used to treat them. Importantly, a difference of opinion between the physician and the prisoner concerning the appropriate course of treatment does not amount to deliberate indifference to serious medical needs. *Toguchi*, 391 F.3d at 1058 (citations and quotations omitted).

Finally, to the extent Fernandez-Morales alleges an Eighth Amendment violation based on interactions with Defendant Abram and lack of an interpreter, the Court finds this belied by the record. The "Language Link Log" kept by SDCC medical staff show Fernandez-Morales had an interpreter present for medical appointments on the following dates in 2022: January 6, January 27, March 1, April 25, May 10, June 13, June 27, September 8, September 19, and December 21. (ECF No. 30-4 at 2; ECF No. 30-21 at 8.) There is ample evidence that Fernandez-Morales received constant medical care for his ailments and there is no evidence that an alleged language barrier prevented him from getting the care he needed.

Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Fernandez-Morales to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

Aside from his own assertions, Fernandez-Morales provides no further evidence or support that Defendants knew of an excessive risk to his health and disregarded that risk. The evidence before the Court shows Fernandez-Morales was continuously treated for his rectal bleeding and there is no evidence showing that any alleged denial or delay in providing treatment was the cause of any damage. Further, there is no evidence that the course of treatment was medically unacceptable under the circumstances or that the

Defendants chose this course in conscious disregard to an excessive risk to Fernandez-Morales's health. *See Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation and quotation marks omitted); *see also Toguchi*, 391 F.3d at 1059-60 (a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference). To the extent Fernandez-Morales had a difference of opinion with the medical doctors, "Eighth Amendment doctrine makes clear that '[a] difference of opinion between a physician and the prison—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference.'" *Hamby*, 821 F.3d at 1092 (citation omitted).

Therefore, Fernandez-Morales has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with his treatment plan or chose a course of treatment that was medically unacceptable under the circumstances.

Based on the above, the Court grants Defendants' motion for summary judgment.[3] *Matsushita,* 475 U.S. at 586.

## IV.    CONCLUSION

Consistent with the above, **IT IS ORDERED** that Defendants' motion for summary judgment, (ECF No. 30), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**DATED**: February 18, 2025

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[3] Because the Court has determined that the motion for summary judgment should be granted on merits of the claims, it need not address Defendants' other procedural arguments, including failure to exhaust and qualified immunity.